UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERRI HUMES,

                    Plaintiff,

v.                                                      3:14-CV-0512
                                                        (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LACHMAN, GORTON LAW FIRM                     PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                  DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 16.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Terri Humes

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 27, 1966. (T. 145.) She completed high school and some college. (T. 265.) Generally, Plaintiff's alleged disability consists of degenerative disc disease, arthritis in the knees, chronic pulmonary obstructive disease ("COPD"), irritable bowel syndrome ("IBS"), depression, and anxiety. (T. 186.) Her alleged disability onset date is February 1, 2010. (T. 181.)[1] Her date last insured is December 31, 2016. (T. 12.) She previously worked as a certified nurse's aide ("CNA") and a "med tech." (T. 220.)

### B. Procedural History

On May 13, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 181.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 19, 2012, Plaintiff appeared before the ALJ, Marie Greener. (T. 32-58.) On January 31, 2013, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-30.) On April 3, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of

---

[1] Plaintiff previously filed Title II and Title XVI applications on August 18, 2010, which were denied on November 18, 2010. Plaintiff requested that her prior applications be reopened; however, the ALJ denied the request. (T. 10.) Plaintiff does not contest the ALJ's denial to reopen her prior applications.

the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 10-25.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since February 1, 2010. (T. 12-13.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the knees, degenerative disc disease of the cervical and lumbar spine, COPD, affective disorder, and anxiety disorder. (T. 13.) The ALJ determined that Plaintiff's IBS, opioid dependence disorder, and broken toe were non-severe impairments. (T. 15.) The ALJ determined that Plaintiff did not have a medically determinable impairment of the wrist or hand. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional non-exertional limitations. (T. 17.)[2] The ALJ found that Plaintiff was limited to

> simple routine tasks that [did] not significantly change in pace or location on a daily basis. She retain[ed] the ability to (on a sustained basis) understand, carry out, and remember simple instruction, to respond appropriately to supervision, coworkers, and usual work situations' and to deal with changes in a routine work setting. Due to her [COPD], [Plaintiff]

---

[2]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

should avoid more than occasional exposure to respiratory irritants and temperature extremes.

(*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 23-25.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes six separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to assess all severe impairments.  (Dkt. No. 13 at 9-12 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's RFC determination as to mental impairments was not supported by substantial evidence.  (*Id.* at 12-15.)  Third, Plaintiff argues the ALJ's physical RFC determination was not supported by substantial evidence.  (*Id.* at 15-20.)  Fourth, Plaintiff argues the ALJ improperly assessed Plaintiff credibility.  (*Id.* at 20-21.)  Fifth, Plaintiff argues the ALJ failed to consult with a vocational expert ("VE").  (*Id.* at 21-22.) Sixth, and lastly, Plaintiff argues the ALJ failed to take into consideration Plaintiff's inability to maintain a regular work schedule and maintain work pace.  (*Id.* at 22-24.)

### B.  Defendant's Arguments

In response, Defendant makes six arguments.  First, Defendant argues the ALJ properly assessed Plaintiff's complaints of pain associated with IBS.  (Dkt. No. 14 at 5-7 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ did not err in assessing Plaintiff's mental RFC.  (*Id.* at 7-14.)  Third, Defendant argues the ALJ did not err in evaluating Plaintiff's physical RFC.  (*Id.* at 14-17.)  Fourth, Defendant did not err in evaluating Plaintiff's COPD.  (*Id.* at 17-18.)  Fifth, Defendant argues

Plaintiff failed to show that the ALJ erred in evaluating her credibility. (*Id.* at 18-19.) Sixth, and lastly, Defendant argues the ALJ was not required to obtain VE testimony. (*Id.* at 19-20.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted

with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff had a severe impairment that significantly limits her physical or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (*citing Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)). Further, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

Here, the ALJ determined Plaintiff's IBS was a non-severe impairment. (T. 14.) The ALJ reasoned that although Plaintiff suffered from IBS, and associated symptoms such as constipation, the record indicated her constipation could be attributed to her Vicodin use. (T. 567.) The ALJ also concluded the record failed to indicate that

Plaintiff's IBS caused more than minimal work-related limitations. (T. 14.) Elsewhere in her decision, the ALJ discussed Plaintiff's complaints of abdominal pain. (T. 20.)

Plaintiff argues the ALJ erred in her conclusion that Plaintiff's IBS was a non-severe impairment and further that the ALJ failed to consider the limiting effects of Plaintiff's IBS symptoms. (Dkt. No. 13 at 10-12.) Specifically, Plaintiff asserts her IBS symptoms of diarrhea, would require bathroom breaks throughout the workday, and therefore cause more than a minimal limitations. (*Id.*)

The ALJ did not err in her step two determination that Plaintiff's IBS was a non-severe impairment because the record did not support a finding of severe. The ALJ relied on the medical records supplied by Plaintiff's gastroenterologist, Steven Hassig, M.D. (T. 14.) Dr. Hassig's notations indicated Plaintiff's IBS primarily caused constipation, not diarrhea. (T. 563, 565, 566, 569.) Further, his notations indicated Plaintiff's IBS was controlled by medication and could be improved with dietary changes. (T. 564, 565, 567, 559.) On November 5, 2010, Plaintiff reported to Dr. Hassig that it had been "many months" since she an episode of severe constipation. (T. 563.) Dr. Hassig recommended medication, increasing water intake, and adding yogurt and exercise to Plaintiff's routine. (T. 564.) On April 18, 2011, Plaintiff reported that a new medication for her constipation was causing diarrhea and the medication dosage was reduced. (T. 566.) On May 24, 2011, Plaintiff again reported that she had not experience constipation of the need to use medication for "several months." (T. 570.) On October 2, 2012, Dr. Hassig noted Plaintiff complained of loose stools since completing a course of antibiotics, but was typically episodically constipated. (T. 559.) Dr. Hassig noted Plaintiff's constipation could be due to lack of sufficient water intake

and Vicodin use.  (T. 567.)  Therefore, the ALJ properly concluded Plaintiff's IBS was a non-severe impairment because the record failed to show Plaintiff's IBS caused more than minimal work limitations.

Plaintiff argues the ALJ erred in her assessment of Plaintiff's IBS symptoms because she failed to consider the frequency and length of bathroom breaks Plaintiff required.  (Dkt. No. 13 at 11-12.)  Plaintiff's argument is without merit.  Plaintiff fails to provide any evidence in the record which indicated Plaintiff required frequent bathroom breaks.  On October 2, 2012, Dr. Hassig noted Plaintiff had loose stools since completing a course of antibiotics for diverticulitis.  (T. 559.)  Emergency room records from December 16, 2010 indicated Plaintiff's diarrhea was likely due to antibiotics.  (T. 297.)  Plaintiff complained in April of 2011 that a new medication caused diarrhea.  (T. 566.)  In May of 2011, Plaintiff continued to complain of diarrhea, but also noted episodes of constipation and "several months" where she did not experience constipation.  (T. 570.)  Although the record contains notations of symptoms due to Plaintiff's IBS, the record is devoid of any indication Plaintiff required frequent bathroom breaks due to her IBS.

Therefore, the ALJ properly concluded Plaintiff's IBS was a non-severe impairment.  Further, any error would be harmless as the ALJ found Plaintiff had severe impairments at step two and the ALJ discussed Plaintiff's abdominal pain elsewhere in her decision.  Plaintiff's argument that the ALJ failed to evaluate Plaintiff's need to frequent a restroom is without merit because the record failed to support Plaintiff's assertion that she required frequent use of the restroom.

### B.    The ALJ's RFC Determination

Plaintiff's RFC is the most she can still do despite her limitations.  *See* 20 C.F.R. §§ 404.1545, 416.945.  In making an RFC determination, the ALJ must base her decision on all of the relevant medical and other evidence in the record.  *Id.* at §§ 404.1545(a)(3), 416.945(a)(3).

### i.)    Mental RFC

When assessing Plaintiff's mental abilities, the ALJ must first assess the nature and extent of Plaintiff's mental limitations and restrictions and then determine her residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce Plaintiff's ability to do past work and other work.  20 C.F.R. §§ 404.1545(c), 416.945(c).

The ALJ's mental RFC determination limited Plaintiff to unskilled work with the ability to respond appropriately to supervision, coworkers, and usual work situations. (T. 17.)  Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  SSR 83-10, 1983 WL 31251, at *7.

On August 4, 2011, Plaintiff underwent a psychiatric consultative examination by Mary Ann Moore, Psy.D.  (T. 398.)  Dr. Moore noted on examination Plaintiff was cooperative and socially adequate.  (T. 400.)  Dr. Moore observed that Plaintiff appeared to be saddened and depressed; however, she was oriented, coherent, and goal directed.  (T. 400-401.)  Dr. Moore observed Plaintiff had impaired attention and

concentration, mildly impaired memory, and below average cognitive functioning.  (T. 401.)

In a medical source statement, Dr. Moore opined Plaintiff could "follow and understand simple directions and instruction, perform simple rote tasks under supervision, and consistently perform simple tasks."  (T. 401-402.)  Dr. Moore further concluded Plaintiff showed mild impairment with attention and concentration, but retained the ability to learn simplistic tasks.  (T. 402.)  Dr. Moore opined Plaintiff would need extra time to learn and retain complex information.  (*Id.*)  She opined Plaintiff had difficulty dealing with stress and showed depression and anxiety, "which may cause problems with relating with others, making appropriate work decisions, and maintaining a regular work schedule."  (T. 402.)

A State agency psychological consultant, Lisa Meade, Ph.D., reviewed the medical evidence in the record on September 23, 2011.  (T. 423.)  Dr. Meade did not personally examine Plaintiff.  Dr. Meade adopted Dr. Moore's medical source statement and further opined Plaintiff could perform simple work activity, but should avoid working closely with others and avoid working directly with the public.  (T. 425.)

The ALJ afforded Dr. Moore's opinion "some weight," but "only to the extent that it [was] supported by the clinical findings reflected in the record."  (T. 23.)  The ALJ reasoned Plaintiff's ability to relate to others was greater than opined by Dr. Moore because Plaintiff was cooperative and responsive during her consultative exam and Plaintiff was calm, cooperative and pleasant during other mental health evaluations.  (*Id.*)  The ALJ also concluded Plaintiff had a greater degree of attention and concentration because on examinations she showed no signs of distractibility, tracked

conversation well, maintained good eye contact, was pleasant, and cooperative. (*Id.*) The ALJ concluded that these findings indicated Plaintiff was able to understand, remember, and carry out simple instructions and perform at least unskilled work. (*Id.*)

Plaintiff essentially argues the ALJ's mental RFC determination failed to account for Plaintiff's need for supervision. (Dkt. No. 13 at 13 [Pl.'s Mem. of Law].) Plaintiff also argues the ALJ's conclusion that Plaintiff could respond appropriately to supervision, coworkers, and usual work situations was not supported by substantial evidence. (Dkt. No. 13 at 13 [Pl.'s Mem. of Law].)

Although Dr. Moore opined Plaintiff could perform rote tasks "under supervision," the ALJ properly afforded her opinion "some weight" and substantial evidence in the record supported the ALJ's mental RFC limiting Plaintiff to simple, routine, unskilled work. Further, the ALJ's mental RFC determination that Plaintiff could respond appropriately to supervision, coworkers and usual work situation was also supported by substantial evidence in the record.

On March 9, 2011, Plaintiff sought mental health treatment from United Health Services. (T. 274.) A mental status examination revealed Plaintiff was motivated and pleasant. (T. 275.) Further, Plaintiff's concentration and attention were "good," and her insight and judgment were "fair." (*Id.*) On May 2, 2001, Plaintiff appeared motivated and pleasant. (T. 268.) Her thought process was coherent and logical. (*Id.*) Plaintiff's concentration and attention were "good." (T. 269.) On May 11, 2011, Plaintiff was calm, co-operative, pleasant, and made good eye-contact. (T. 272.) Plaintiff's mood was noted as "slightly anxious." (*Id.*) Plaintiff was logical and goal-directed with "fair" insight and judgment. (*Id.*) On May 20, 2011, Plaintiff was again described as

motivated and pleasant.  (T. 263.)  Plaintiff's thought process was coherent and logical

and her attention and concentration were "good."  (T. 264.)  Plaintiff requested that her

case with United Health Services be closed because she did not wish to attend group

therapy sessions.  (T. 265.)

Plaintiff returned to United Health Services in August of 2012.  (T. 636.)  A

mental status examination revealed Plaintiff was attentive, pleasant, appropriate, but

also dysphoric and labile.  (T. 637.)  The August 2012 exam indicated Plaintiff was

coherent and logical and her concentration and attention were "good."  (*Id.*)  On

September 7, 2012, Plaintiff was discharged from treatment because of an authorization

issue.  (T. 642.)

Plaintiff received mental health treatment from Broome County Mental Health

Department in September of 2012.  (T. 526.)  A mental status examination was normal

and noted Plaintiff had average social skills and good memory.  (T. 528.)  Treatment

notations dated October 11, 2012, indicated Plaintiff was hospitalized when she

overdosed on Klonopin after a relationship ended.  (T. 530.)

Plaintiff argues the ALJ failed to take into consideration her inability to maintain a

regular work schedule and maintain work pace.  (Dkt. No. 13 at 22-24 [Pl.'s Mem. of

Law].)  In support of her argument, Plaintiff relies on opinion evidence in the record by

Dr. Magurno, Dr. Moore, Dr. Mead and Dr. Ahmed which she asserts supported the

conclusion that Plaintiff could not engage in regular and sustained employment.  (*Id.*)

The ALJ determined Plaintiff could perform work "on a sustained basis."

Plaintiff specifically points to Dr. Moore's statement that Plaintiff's psychiatric

issues "may significantly interfere with [her] ability to function on a daily basis" and  Dr.

Mead's opinion that Plaintiff's mental impairments cause "moderate limitations" in the areas of "sustained concentration and persistence," "social interaction," and "adaptation." (Dkt. No. 13 at 23 [Pl.'s Mem. of Law].)

First, as discussed herein, Dr. Moore's opinion was properly afforded "some weight," and despite her opinion that Plaintiff's mental impairments "may" create difficulty functioning on a daily basis, Dr. Moore ultimately concluded Plaintiff could follow and understand simple directions and instructions. (T. 401-402.) Further, the ALJ properly relied on medical evidence, as outlined above, of normal mental status examination and other notations indicating Plaintiff was cooperative and had adequate social skills. *See Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) (ALJ properly afforded opinion that plaintiff "may have" difficulty understanding instructions and "may have" difficulty interacting appropriately with others little weight where mental status examinations revealed plaintiff's attention and concentration were intact, and plaintiff was cooperative, her manner of relating, social skills, and overall presentation were adequate).

Second, although Dr. Meade indicated Plaintiff had "moderate limitations" in certain areas due to her mental impairments, she too ultimately concluded Plaintiff was capable of following and understanding simple directions and instructions, perform simple rote tasks under supervision, and consistently perform simple tasks. (T. 425.) Likewise, Dr. Ahmed's opinion regarding absenteeism was properly afforded "little evidentiary weight," as discussed infra. Therefore, the ALJ properly assessed Plaintiff's ability to perform work on a sustained basis because the medical evidence in the record

supported the ALJ's mental RFC determination; and further, many of the alleged limitations were encompassed in an ability to perform unskilled, simple, routine work.

In sum, substantial evidence supported the ALJ's mental RFC determination and the ALJ properly afforded the opinion of Dr. Moore "some weight." Mental status examinations, as outlined above, were inconsistent with Dr. Moore's conclusion that Plaintiff required supervision to perform rote tasks. Further, the examinations provided substantial evidence to support the conclusion that Plaintiff could perform simple, routine, unskilled work and could work with supervisors, co-workers and the public. The limited mental health treatment Plaintiff received indicated that she was co-operative and pleasant, she had good attention and concentration, and she had a logical thought process, all which support the conclusion that Plaintiff could complete the demands of simple, routine, unskilled work without additional limitations. Therefore, for the reasons stated herein, and in Defendant's brief, the ALJ properly assessed Plaintiff's mental RFC and remand is not recommended.

### ii.) Physical RFC

In assessing Plaintiff's physical abilities, the ALJ must first assess the nature and extent of Plaintiff's physical limitations and then determine Plaintiff's RFC for work activity on a regular and continuing basis. 20 C.F.R. §§ 404.1545(b), 416.945(b).

In making her determination that Plaintiff could perform light work with additional environmental limitations, the ALJ relied on the medical opinion evidence of consultative examiner, Justine Magurno, M.D., Plaintiff's treating nurse practitioner from Lourdes, State agency medical consultant, Jeffrey Wheeler, M.D., and Shoaib Ahmed, M.D. (T. 21-22.) The medical opinions are summarized here.

Dr. Magurno examined Plaintiff on August 4, 2011. (T. 404.) Dr. Magurno observed Plaintiff had a normal gait, could walk on heels and toes, needed no help changing or getting on/off the exam table, and her squat was "one-quarter." (T. 406.) Dr. Magurno observed on physical examination that Plaintiff had full flexion and rotations in her cervical spine, and extension of 20 degrees. (T. 407.) She observed that Plaintiff had no abnormality in her thoracic spine. (*Id.*) Dr. Magurno observed Plaintiff had lumbar flexion of 40 degrees, lumbar extension of 10 degrees, lumbar lateral flexion of 15 degrees, and full lumbar rotation. (*Id.*) Dr. Magurno observed Plaintiff had full range of motion in her upper and lower extremities, except for reduced hip flexion to 90 degrees. (*Id.*) Dr. Magurno noted Plaintiff had no sensory deficit and full strength in her upper and lower extremities. (*Id.*)

In a medical source statement, Dr. Magurno opined Plaintiff should avoid dust, fumes, and other known irritants. (*Id.*) She further opined Plaintiff had "marked limitations" for squatting, bending, lifting, and carrying; "moderate limitations" for pushing and pulling; "mild limitations" for reaching, standing, and walking. (*Id.*) Dr. Magurno opined Plaintiff had "no limitations" for sitting, fine motor activities, speech and hearing, and vision. (*Id.*) The ALJ provided the opinion of Dr. Magurno "great weight." (T. 22.) The ALJ reasoned Dr. Magurno's opinion was supported by her physical examination and by other opinion evidence in the record, specifically notations by Plaintiff's treating nurse practitioner. (*Id.*)

Frances Munroe, FNP treated Plaintiff on July 11, 2011. (T. 448.) At that time, Ms. Munroe noted Plaintiff had limited range of motion in her low back, increased pain with flexion, extension, and lateral movements. (*Id.*) Ms. Munroe opined Plaintiff was

capable of working full time, with air conditioning, and "light duty." (*Id.*) She specifically opined Plaintiff could lift no more than 25 pounds. (*Id.*) Ms. Munroe noted that Plaintiff requested she complete paperwork for a "welfare-to-work" program because her treating orthopedist declined to do so. (*Id.*) Previously, on June 29, 2011, Ms. Munroe noted that Plaintiff requested she complete the "welfare-to-work" paperwork; however, she declined to do so because she did not treat Plaintiff for her back issues and advised Plaintiff to have her orthopedist fill it out. (T. 450.) The ALJ afforded Ms. Munroe's opinion "some weight," because she was a treating source and her opinion was supported by objective medical evidence in the record. (T. 21.)

Dr. Wheeler did not examine Plaintiff, but reviewed the medical evidence in the record. Dr. Wheeler opined that the RFC form completed by the disability analyst on September 28, 2011 should be affirmed. (T. 447.) Based on the medical evidence, and other evidence, in the record the disability analyst opined Plaintiff could perform the exertional requirements of light work with additional environmental limitations. (T. 62-64.) The disability analyst opined Plaintiff should avoid concentrated exposure to extreme heat; humidity; and fumes, odors, dusts, gases, and poor ventilation. (T. 64.)

Dr. Wheeler further opined that Dr. Magurno's medical source statement that Plaintiff had "limitations" for squatting, bending, lifting, and carrying, "moderate limitations" for pushing and pulling, and "mild limitations" for reaching, standing, and walking, were consistent with an ability to perform light work. (T. 447.) The ALJ afforded Dr. Wheeler's opinion "some weight," but noted his opinion received less weight than Dr. Magurno, because he did not personally examine Plaintiff. (T. 22.)[3]

---

[3]     Plaintiff argues Dr. Wheeler's opinion was entitled to little if any weight and cannot constitute substantial evidence. (Dkt. No. 13 at 18n.1 [Pl.'s Mem. of Law].) An ALJ "is entitled to rely

Plaintiff argues the ALJ's finding that Plaintiff could perform light work was inconsistent with Dr. Magurno's opinion that Plaintiff had "marked limitations" for squatting, bending, lifting and carrying. (Dkt. No. 13 at 16-18 [Pl.'s Mem. of Law].) In support of her argument Plaintiff relies on *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000).

Plaintiff argues that in *Curry* the Court held that the phrase "moderate limitation to lifting and carry" could not support sedentary work; therefore, based on that reasoning Plaintiff argues the phrase "marked limitations" to lifting and carrying could not support light work.[4] However, the Court in *Curry* did not conclude that a moderate limitation to lifting and carrying was inconsistent with sedentary work, but rather that the term "moderate" was too vague to constitute substantial evidence to support a finding of sedentary work. *Curry*, 209 F.3d at 123, ("Dr. Mancheno's opinion is so vague as to render it useless in evaluating whether Curry can perform sedentary work"). Defendant argues *Curry* does not apply here because *Curry* was superseded by regulations at 20 C.F.R. 404.1560(c)(2), as acknowledged in *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). (Dkt. No. 14 at 15 [Def.'s Mem. of Law].)

The Second Circuit in *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) confirmed that *Curry* remains sound authority with respect to an ALJ's RFC determination at step four of the sequential disability analysis, although *Curry* was superseded by a change in the Social Security regulations, 20 C.F.R. § 404.1560(c)(2),

upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

[4] "If a finding of moderate limitations to lifting and carrying cannot support a finding of an ability to do sedentary work, then it necessarily follows that a more serious finding to marked limitations to lifting and carrying cannot support a finding of an ability to do light work, which requires greater exertional ability than sedentary work." (Dkt. No. 13 at 16 [Pl.'s Mem. of Law].)

with respect to the extent that the burden of proof is shifted to the Commissioner at step five. *See Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir.2009) (under the revised regulation, the Commissioner need only show, at step five, that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity). Therefore, the entirety of the *Curry* decision was not superseded by statute.

Some post-*Curry* cases have held that "use of terms like 'mild' and 'moderate' . . . pass substantial evidence muster when medical evidence shows relatively little physical impairment" or the medical scenario is not complex. *Anderson v. Colvin,* No. 5:12-CV-1008, 2013 WL 5939665, at *9 (N.D.N.Y. Nov.5, 2013), *see also Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 34 (2d Cir.2013) (the opinions of the consultative examiner, coupled with the other medical evidence, were sufficient to support the inference drawn); *see also Lewis v. Colvin,* 548 F. App'x 675, 677-78 (2d Cir. 2013) (the ALJ's determination that plaintiff could perform light work was supported, *inter alia,* by a medical source assessment of mild limitations for prolonged sitting, standing, and walking and direction that plaintiff should avoid heavy lifting, and carrying); *see Boyd v. Colvin*, No. 3:14-CV-1316, 2016 WL 866345, at *6 (N.D.N.Y. Mar. 3, 2016); *Rodriguez v. Colvin*, No. 6:14-CV-1129, 2016 WL 447715, at *8 (N.D.N.Y. Feb. 4, 2016) (opinion of consultative examiner "was clearly not so vague as to prevent the ALJ to bridge the gap between Rodriguez's impairments and the functional limitations for walking or stooping"); *Mancuso v. Colvin*, No. 12-CV-642S, 2013 WL 3324006, at *4 (W.D.N.Y. July 1, 2013) (using the phrase "moderate limitations" does not render a doctor's opinion vague or non-substantial for purposes of the ALJ's RFC determination).

Here, the ALJ relied on other evidence in the record that supported her RFC determination that Plaintiff could perform light work. It is well settled in the Second Circuit that it is the ALJ's role to weigh medical opinion evidence and to resolve conflicts in that evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). Further, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). For the reasons discussed further herein, the ALJ's physical RFC was supported by substantial evidence.

First, Dr. Magurno's opinion was not entirely inconsistent with the ability to perform light work. Dr. Magurno opined Plaintiff had "mild limitations" for standing, walking, and reaching. (T. 407.) These limitations were consistent with Dr. Wheeler's opinion that Plaintiff could stand and/or walk for two hours in an eight hour work-day and had no limitations in her ability to reach. (T. 447 *referring to* T. 70-71.) Therefore, the exertional requirements of standing and walking are supported and the non-exertional requirement of reaching was also supported.

Second, the ALJ held that Dr. Magurno's opinion was consistent with Ms. Munroe's and Dr. Wheeler's opinions. (T. 22.) In terms of exertional limitations, the ALJ specifically relied on Ms. Munroe's statement that Plaintiff could lift up to 25 pounds and on Dr. Wheeler's opinion that Plaintiff could lift and/or carry up to 20 pounds occasionally and ten pounds frequently, per the requirements of light work. (T. 21-22.) Here, the ALJ reconciled Dr. Magurno's finding of "marked limitation" in lifting and

carrying with Ms. Munroe's and Dr. Wheeler's opinions which provided specific weight restrictions and clearly fell within the parameters of light work.[5] Dr. Magurno's term "marked" was not defined in her medical source statement; however, Ms. Munroe and Dr. Wheeler provided specific weight limitations in their opinions which the ALJ adopted. Therefore, substantial evidence supports the lifting and carrying requirements of light work.

Plaintiff argues a "marked" limitation for squatting and bending was inconsistent with light work. (Dkt. No. 13 at 16 [Pl.'s Mem. of Law].) If a person can stoop occasionally, from very little up to one-third of the time, in order to lift objects, the sedentary and light occupational base is virtually intact. SSR 85-15, 1985 WL 56857 at *7 (1985). In terms of squatting, additional limitations would appear to have no effect on the occupational base of light work. *See* SSR 85–15, 1985 WL 56857 at *7 (1985) (explaining that light work only requires the ability to stoop, defined as bending the body downward and forward by bending the spine at the waist, occasionally, that is, from very little to up to one-third of the time); *see also Clow v. Comm'r of Soc. Sec.,* No. 1:13-CV-998, 2015 WL 729697, at *2 (N.D.N.Y. Feb. 19, 2015). Therefore, the ALJ did not err in her RFC determination that Plaintiff could perform the postural requirements of light work.

Plaintiff argues Dr. Magurno's opinion of "marked" limitations was consistent with Dr. Ahmed's medical source statement. (Dkt. No. 13 at 17-18.) However, this Court agrees with Defendant's argument that Dr. Ahmed's opinion was, in fact, not consistent with Dr. Magurno; and further, the ALJ properly afforded his opinion "little weight." (Dkt.

---

[5]     Dr. Wheeler also noted Dr. Magurno opined Plaintiff had "limitations" in squatting, bending, lifting, carrying and these limitations were "consistent with RFC" for light work. (T. 447.)

No. 14 at 16-17 [Def.'s Mem. of Law].)  As Defendant states, Dr. Magurno did not opine, as Dr. Ahmed did, that Plaintiff needed a ten minute rest every hour or that Plaintiff could sit for less than six hours in a workday.  (*Id.* at 16.)  Further, the ALJ properly afforded Dr. Ahmed's opinion "little weight."  The ALJ reasoned Dr. Ahmed treated Plaintiff twice and on both occasions he noted no abnormal findings.  (T. 22.)  Further, the record indicated Plaintiff may not have been truthful in reporting her condition and symptoms to Dr. Ahmed.  (*Id.*)

Plaintiff next argues the ALJ failed to assess limitations imposed by Plaintiff's COPD.  (Dkt. No. 13 at 18-20 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues that Dr. Magurno's opinion that Plaintiff should "avoid dust, fumes, and other known lung irritants" equates to an ability to tolerate "very little irritants."  (*Id.* at 19.)  Plaintiff failed to show she could tolerate only "very little" environmental irritants.

The medical evidence failed to support more restrictive environmental limitations.  Dr. Wheeler indicated that based on his review of the medical record, there was no ongoing problems with COPD and noted Dr. Magurno's examination showed no breathing problems.  (T. 447.)  The ALJ discussed Plaintiff's COPD at step two and step four.  (T. 14, 22.)  The ALJ also discussed Plaintiff's allegations of limitations due to her COPD in his credibility analysis and ultimately determined Plaintiff's allegations were not credible.  (T. 18.)

Notations by Plaintiff's pulmonologist, Jose Pacheco, M.D., indicated Plaintiff had "significant improvement in all parameters" in January 2012; specifically, Plaintiff's total lung capacity was normal and her diffusion capacity was "moderately" reduced.  (T. 475.)  These results were an improvement from testing results in April 2011 which

indicated Plaintiff's total lung capacity was "very mildly reduced" and her diffusion capacity was "severely reduced." (T. 482.) Dr. Pacheco further cleared Plaintiff for surgery and indicated her "pulmonary function tests [were] stable" and her COPD presented a "mild increased risk" for surgery. (T. 505.) Therefore, the ALJ properly determined Plaintiff should avoid "more than occasional exposure to respiratory irritants and temperature extremes" because the record failed to provide greater limitations than those imposed. (T. 17.)

Overall, Plaintiff essentially argues the ALJ improperly resolved an apparent conflict in the record. Plaintiff argues Dr. Magurno's use of the term "marked" intrinsically implies an inability to perform the exertional and non-exertional demands of light work. Dr. Magurno's report did not define the term "marked," nor does Plaintiff provide persuasive support that the term precludes the requirements of light work. Although courts have found terms, such as "marked," are vague, an ALJ may rely on them in making an RFC determination. Ultimately, it is the duty of the ALJ, not the reviewing Court, to resolve conflicts in the record.

Here, the ALJ properly resolved any apparent conflicts. This Court can reasonably conclude from the ALJ's decision that she determined Dr. Magurno's finding of "marked" limitations consistent with Ms. Munroe's specific weight limitations and Dr. Wheeler's adoption of the RFC indicating Plaintiff could perform light work. Further, substantial evidence, as outlined herein, supported the ALJ's overall physical RFC determination that Plaintiff could perform light work. Therefore, for the reasons stated herein, and in Defendant's brief, the ALJ properly assessed Plaintiff's physical RFC and remand is not recommended.

## C.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ ultimately determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (T. 18.) In making her credibility determination the ALJ outlined the appropriate legal standard, discussed objective medical evidence in the record, outlined Plaintiff's testimony regarding her symptoms, and discussed Plaintiff's pain medication and treatment. (T. 18-21.)

Plaintiff argues the ALJ's credibility determination and factual conclusions were "simply incorrect" and the ALJ did not "properly review the record," but instead "cherry-picked" the record. (Dkt. No. 13 at 20-21 [Pl.'s Mem. of Law].) In support of her argument Plaintiff cites to portions of the record that she alleges support her allegations of pain. However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

To be sure, the ALJ erred in her statement that Plaintiff "never had physical therapy." (T. 19.) Treatment notes from December 2010, one month after the onset

date, indicated Plaintiff was participating in physical therapy. (T. 295, 299.) A notation from August 2012 indicated Plaintiff was to start physical therapy and Plaintiff was referred to physical therapy in September 2012. (T. 542, 552.) However, the record does not contain physical therapy records.

However, this one oversight would not change the outcome of the ALJ's credibility determination, nor was this oversight proof the ALJ "cherry picked" the record or that the ALJ's facts were "flat out wrong" as Plaintiff asserts. (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].) As stated by Defendant, the ALJ did not find that Plaintiff's allegations were not entirely credible because of "any one piece of evidence or finding, but based on the entirety of the evidence." (Dkt. No. 14 at 19 [Def.'s Mem. of Law].)

A thorough review of the record and ALJ's credibility analysis indicated the ALJ did not "cherry pick" the record or that the ALJ's facts were "flat out wrong." The ALJ based her credibility determination on the objective medical evidence in the record, Plaintiff's testimony regarding her pain and other symptoms, Plaintiff's use of pain medication and Plaintiff's methods of treating her pain. (T. 18-21.) Therefore, the ALJ conducted a proper credibility analysis and remand is not recommended.

### D. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally

satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Plaintiff essentially argues the ALJ was required to call on the testimony of a VE at step five because Plaintiff had numerous non-exertional impairments. (Dkt. No. 13 at 21-22 [Pl.'s Mem. of Law].) However, Plaintiff does not argue that the ALJ's RFC determination, as found, required VE testimony, but instead that an RFC with the additional limitations argued by Plaintiff would require the testimony of a VE. At step five the ALJ concluded that under SSR 85-15 the testimony of a VE was not required because the additional mental limitation imposed allowed Plaintiff to still meet the requirements of unskilled work. (T. 25.) The ALJ also concluded that the environmental limitations did not significantly erode the occupational based according to SSR 96-9p. (*Id.*) Because substantial evidence supported the ALJ's RFC determination without the additional limitations mentioned by Plaintiff, remand is not recommended at step five.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:        March 16, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge